BRAZE LAW OFFICES
James J. Braze
201 Keller Street
Petaluma, CA 94952
Telephone (707)763-2212
Facsimile (707) 766-8631

FILED-ED5 00 DEC 15 AM 9:41 U.S. DISTRICT COURT

00C 7870

Attorneys for Defendants
MARY FRANCES DAVIES a/k/a FRANCES DAVIES, PHILIP H. DAVIES, ROGER FELIPE HOLMES, MARY CATHERINE HOLMES, MARY CARLOTTA HOLMES, MARY PATRICIA RIDENS, STEPHEN JENNINGS HOLMES, MARGARET MARY TYE, LOUIS DAMIAN HOLMES, MARY LORETTA COLIN, ESTATE OF ROGER G. HOLMES, Deceased, ROGER G. HOLMES FAMILY TRUST

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

JUDGE KOCORAS

| | |
|---|---|
| NORTH SHORE COMMUNITY BANK & TRUST CO.,<br>Plaintiff,<br><br>vs.<br><br>MARY FRANCES DAVIES a/k/a FRANCES DAVIES, PHILIP H. DAVIES, ROGER FELIPE HOLMES, MARY CATHERINE HOLMES, MARY CARLOTTA HOLMES, MARY PATRICIA RIDENS, STEPHEN JENNINGS HOLMES, MARGARET MARY TYE, LOUIS DAMIAN HOLMES, MARY LORETTA COLIN, ESTATE OF ROGER G. HOLMES, Deceased, ROGER G. HOLMES FAMILY TRUST Created February 19, 1998, NORSTAR DEVELOPMENT CORPORATION, JEFFREY GOLDBERG, STANLEY KOMPARDA a/k/ a STANLEY L. KOMPARDA, UNKNOWN OWNERS and NON-RECORD CLAIMANTS,<br>Defendants. | Case No.: MAGISTRATE JUDGE GERALDINE SOAT BROWN<br><br>NOTICE OF REMOVAL<br>[28 USC §§ 1441, 1446]<br><br>DOCKETED<br>DEC 1 8 2000 |

To the Judges of the United States District Court for the Northern District of Illinois:

1

The notice of removal of defendants MARY FRANCES DAVIES a/k/a FRANCES DAVIES, PHILIP H. DAVIES, ROGER FELIPE HOLMES, MARY CATHERINE HOLMES, MARY CARLOTTA HOLMES, MARY PATRICIA RIDENS, STEPHEN JENNINGS HOLMES, MARGARET MARY TYE, LOUIS DAMIAN HOLMES, MARY LORETTA COLIN, ESTATE OF ROGER G. HOLMES, Deceased, ROGER G. HOLMES FAMILY TRUST Created February 19, 1998, respectively shows:

1. On October 27, 2000 an action was commenced against said defendants in the Circuit Court of the 19th Judicial Circuit, Lake County, Illinois, Case No.: 00CH1292, entitled NORTH SHORE COMMUNITY BANK & TRUST CO., Plaintiff, vs. MARY FRANCES DAVIES a/k/a FRANCES DAVIES, PHILIP H. DAVIES, ROGER FELIPE HOLMES, MARY CATHERINE HOLMES, MARY CARLOTTA HOLMES, MARY PATRICIA RIDENS, STEPHEN JENNINGS HOLMES, MARGARET MARY TYE, LOUIS DAMIAN HOLMES, MARY LORETTA COLIN, ESTATE OF ROGER G. HOLMES, Deceased, ROGER G. HOLMES FAMILY TRUST Created February 19, 1998, NORSTAR DEVELOPMENT CORPORATION, JEFFREY GOLDBERG, STANLEY KOMPARDA a/k/ a STANLEY L. KOMPARDA, UNKNOWN OWNERS and NON-RECORD CLAIMANTS, Defendants.

2. Within the last thirty(30) days, service was made on defendants MARY FRANCES DAVIES a/k/a FRANCES DAVIES, PHILIP H. DAVIES, ROGER FELIPE HOLMES, MARY CATHERINE HOLMES, MARY CARLOTTA HOLMES, MARY PATRICIA RIDENS, STEPHEN JENNINGS HOLMES, MARGARET MARY TYE, LOUIS DAMIAN HOLMES, MARY LORETTA COLIN, ESTATE OF ROGER G. HOLMES, Deceased, ROGER G. HOLMES FAMILY TRUST of a summons and complaint, copies of which are annexed to this notice. No further proceedings have been had in the state court action.

3. The above-described action is a civil action of which this court has original jurisdiction under the provisions of Title 28, Section 1332 of the United States Code, and is one that may be removed to this court by defendant, pursuant to Title 28, Section 1441

of the United States Code, in that it is a civil action wherein the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between citizens of different states.

4. Plaintiff NORTH SHORE COMMUNITY BANK & TRUST CO. at the time this action was commenced is an Illinois Banking Corporation with its principal place of business in Wilmette, Illinois. Defendants MARY FRANCES DAVIES a/k/a FRANCES DAVIES, PHILIP H. DAVIES, ROGER FELIPE HOLMES, MARY CATHERINE HOLMES, MARY CARLOTTA HOLMES, MARY PATRICIA RIDENS, STEPHEN JENNINGS HOLMES, MARGARET MARY TYE, LOUIS DAMIAN HOLMES, MARY LORETTA COLIN, were individuals residing in California, Arizona and Vermont which are states other than the State of Illinois. At the time that ROGER G. HOLMES, died he was a resident of the State of California. The ROGER G. HOLMES FAMILY TRUST which is named as a defendant was created in and remains in the State of California

WHEREFORE, defendant prays that the above action now pending against it in the Circuit Court of The 19th Judicial Circuit, Lake County, Illinois, be removed therefrom to this Court.

Dated: December 4, 2000

BRAZE LAW OFFICES

JAMES J. BRAZE
Attorneys for Defendants
MARY FRANCES DAVIES a/k/a FRANCES DAVIES, PHILIP H. DAVIES, ROGER FELIPE HOLMES, MARY CATHERINE HOLMES, MARY CARLOTTA HOLMES, MARY PATRICIA RIDENS, STEPHEN JENNINGS HOLMES, MARGARET MARY TYE, LOUIS DAMIAN HOLMES, MARY LORETTA COLIN, ESTATE OF ROGER G. HOLMES, Deceased, ROGER G. HOLMES FAMILY TRUST

IN THE NAME OF E PEOPLE OF THE STATE OF INOIS,
IN THE CIRCUIT COURT OF THE
NINETEENTH JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS

COPY

NORTH SHORE COMMUNITY BANK & TRUST CO.,

Plaintiffs

vs.

MARY FRANCES DAVIES a/k/a FRANCES DAVIES, et al.,

Defendants

No. 00 CH 1292

To each of the above-named defendants:

You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Clerk of this Court/ 18 N. County St., Waukegan, Illinois within 30 days after service of this summons, exclusive of the day of service. If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed in the complaint.

This summons must be returned by the officer or other person to whom it was given for service, with indorsement thereon of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so indorsed.

This summons may not be served later than 30 days after its date.

WITNESS SALLY DEADRICK COFFELT, Clerk of said Circuit Court, and the seal thereof at Waukegan, Illinois,

this ______ day of ______ A.D., 19____.

SEAL
OF
COURT

LETVIN & STEIN
Attorneys for Plaintiff
541 North Fairbanks Court
Suite 2121
Chicago, Illinois 60611
(312) 527-2841
ARDC No.: 2715813

Date of Service: 11/13/00 19____
(To be inserted by officer on copy left with defendant or other person.)

STATE OF ILLINOIS )
) SS
COUNTY OF LAKE )

COPY

IN THE CIRCUIT COURT OF THE 19TH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

NORTH SHORE COMMUNITY BANK & TRUST CO.,

Plaintiff,

vs.

No.

MARY FRANCES DAVIES a/k/a FRANCES DAVIES, PHILIP H. DAVIES, ROGER FELIPE HOLMES, MARY CATHERINE HOLMES, MARY CARLOTTA HOLMES, MARY PATRICIA RIDENS, STEPHEN JENNINGS HOLMES, MARGARET MARY TYE, LOUIS DAMIAN HOLMES, MARY LORETTA COLIN, ESTATE OF ROGER G. HOLMES, Deceased, ROGER G. HOLMES FAMILY TRUST Created February 19, 1998, NORSTAR DEVELOPMENT CORPORATION, JEFFREY GOLDBERG, STANLEY KOMPARDA a/k/a STANLEY L. KOMPARDA, UNKNOWN OWNERS and NON-RECORD CLAIMANTS,

Defendants.

North Shore Community Bank & Trust Co., by its attorneys, Letvin & Stein, complains against Defendants hereinafter named as follows:

## COUNT I

## COMPLAINT TO FORECLOSE MORTGAGE AND FOR OTHER RELIEF

1. Plaintiff files this complaint to foreclose the mortgage (or other conveyance in the nature of a mortgage, hereinafter called "mortgage") hereinafter described, pursuant to Section 15-1504 of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1101 et seq.) and joins the following persons as defendants:

MARY FRANCES DAVIES a/k/a FRANCES DAVIES, individually, as Co-Executor of the Estate of Roger G. Holmes, Deceased, and as Successor Co-Trustee of the Roger G. Holmes Family Trust Created February 19, 1998;

Phil Goldberg, Registered Agent
4022 N. Sheridan Road
Chicago, Illinois 60613

ESTATE OF ROGER G. HOLMES, Deceased
c/o Roger B. Mandel
Kamensky & Rubenstein
7250 N. Cicero Avenue
Suite 200
Lincolnwood, Illinois 60646

STANLEY KOMPARDA a/k/a STANLEY L. KOMPARDA
619 S. Albert
Mt. Prospect, Illinois 60056

PHILIP H. DAVIES, as Co-Executor of the Estate of Roger G. Holmes, Deceased, and as Successor Co-Trustee of the Roger G. Holmes Family Trust Created February 19, 1998;

ROGER FELIPE HOLMES, individually, as Co-Executor of the Estate of Roger G. Holmes, Deceased, and as Successor Co-Trustee of the Roger G. Holmes Family Trust Created February 19, 1998;

MARY CATHERINE HOLMES, individually;

MARY CARLOTTA HOLMES, individually;

MARY PATRICIA RIDENS, individually;

STEPHEN JENNINGS HOLMES, individually;

MARGARET MARY TYE, individually;

LOUIS DAMIAN HOLMES, individually;

MARY LORETTA COLIN, individually;

ESTATE OF ROGER G. HOLMES, Deceased;

ROGER G. HOLMES FAMILY TRUST Created February 19, 1998;

NORSTAR DEVELOPMENT CORPORATION;

JEFFREY GOLDBERG;

STANLEY KOMPARDA a/k/a STANLEY L. KOMPARDA;

UNKNOWN OWNERS; and

NON-RECORD CLAIMANTS.

2. Attached as Exhibit "A" is a copy of the Mortgage and as Exhibit "B" is a copy of the Note secured thereby.

3. Information concerning mortgage:

A. Nature of instrument: Mortgage.

B. Date of mortgage: June 26, 1996.

C. Name or names of mortgagor or mortgagors: Roger Holmes.

D. Name of mortgagee, trustee or grantee in mortgage: North Shore Community Bank & Trust Co.

E. Date and place of recording, or of filing if the land is registered under "An Act Concerning Land Titles" approved May

1, 1897, as heretofore and hereafter amended: Mortgage recorded in the office of the Recorder of Deeds in Lake County, on June 26, 1996.

F. Identification of recording: Document No. 3842752.

G. Interest subject to the mortgage: Fee simple title conveyed as security.

H. Amount of original indebtedness including subsequent advances made under the mortgage: $ 500,000.

I. Legal description and common address of the mortgaged premises:

THAT PART OF THE NORTHEAST QUARTER OF THE NORTHEAST QUARTER OF SECTION 30, TOWNSHIP 46 NORTH, RANGE 10 EAST OF THE THIRD PRINCIPAL MERIDIAN, LYING EAST OF THE CENTER LINE OF THE PUBLIC HIGHWAY; ALSO THE NORTHEAST QUARTER OF THE NORTHEAST QUARTER OF SAID SECTION 30 AND THE NORTHEAST QUARTER OF THE NORTHEAST QUARTER OF SAID SECTION 30 (EXCEPT THE EAST 1080 FEET THEREOF); SITUATED IN LAKE COUNTY, ILLINOIS;

Common Address: Southeast Corner Route 59 and Townline Road, Lake Villa, Illinois 60046;

Permanent Index Numbers: 02-30-100-002
02-30-200-001
02-30-200-002.

J. Statement as to defaults:

Failure to make payments due September 6, 2000;

| | |
|---|---|
| Current unpaid principal balance: | $ 448,195.72; |
| Per diem interest charges: | $ 168.07 per day; |
| Late Charges: | $ 22,409.79 due; |
| Interest to September 30, 2000 | $ 4,033.68. |

K. Name or names of present owner or owners of the real estate: ESTATE OF ROGER G. HOLMES.

L. Names of other persons who are joined as defendants and whose interest in or lien on the mortgaged real estate is sought to be terminated:

MARY FRANCES DAVIES a/k/a FRANCES DAVIES, individually, as Co-Executor of the Estate of Roger G. Holmes, Deceased, and as Successor Co-Trustee of the Roger G. Holmes Family Trust Created February 19, 1998;

PHILIP H. DAVIES, as Co-Executor of the Estate of Roger G. Holmes, Deceased, and as Successor Co-Trustee of the Roger G. Holmes Family Trust Created February 19, 1998;

ROGER FELIPE HOLMES, individually, as Co-Executor of the Estate of Roger G. Holmes, Deceased, and as Successor Co-Trustee of the Roger G. Holmes Family Trust Created February 19, 1998;

MARY CATHERINE HOLMES, individually;

MARY CARLOTTA HOLMES, individually;

MARY PATRICIA RIDENS, individually;

STEPHEN JENNINGS HOLMES, individually;

MARGARET MARY TYE, individually;

LOUIS DAMIAN HOLMES, individually;

MARY LORETTA COLIN, individually;

ROGER G. HOLMES FAMILY TRUST Created February 19, 1998;

NORSTAR DEVELOPMENT CORPORATION;

JEFFREY GOLDBERG;

STANLEY KOMPARDA a/k/a STANLEY L. KOMPARDA;

UNKNOWN OWNERS; and

NON-RECORD CLAIMANTS.

The marital status of Roger G. Holmes is unknown to plaintiff. Therefore, in addition to persons designated by name herein, there are other persons who are interested in this action, who have or claim to have some right, title, interest, or lien in, to or upon the real estate, or some part thereof, as described, as the spouse or spouses of Roger G. Holmes. The name of each of such other persons is unknown to plaintiff and on diligent inquiry cannot be ascertained, and all such other persons are therefore made parties defendant to this action by the name and description of "Unknown Owners".

In addition to the persons designated by name herein and the unknown defendants herein above referred to, there are other persons who are interested in this action and who have or claim some right, title, interest or lien in, to or upon the real estate, or some part thereof, as described. The name of each of such other persons is unknown to plaintiff and on diligent inquiry cannot be ascertained, and all such persons are therefore made parties defendant to this action by the name and description

of Unknown Others and their interest if any is subject, subordinate and inferior to lien of the plaintiff's mortgage.

In addition to the persons designated by name herein, there are other persons who have or claim to have an interest in or upon the mortgaged real estate which is not disclosed of record by recorded notice or proceeding which would give constructive notice and who are more fully defined in Section 15-1210 of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1210). The name or names of these other persons are unknown to the plaintiff and to this deponent and all such other persons are made parties defendant to this action by the name and description of Non-Record Claimants.

In addition to persons designated by name herein, there are other persons who are interested in this action and who have or claim some right, title, interest or lien in, to or upon the real estate, or some part thereof, as described, as the beneficiary or beneficiaries under the ROGER G. HOLMES FAMILY TRUST Created February 19, 1998. The name of each of such other persons so interested in this action is unknown to plaintiff and on diligent inquiry cannot be ascertained, and all such persons are therefore made parties defendant to this action by the name and description of Unknown Owners and their interest if any is subject, subordinate and inferior to lien of the plaintiff's mortgage.

M. Name or names of defendants claimed to personally liable for deficiency, if any: JEFFREY GOLDBERG and STANLEY KOMPARDA a/k/a STANLEY L. KOMPARDA.

N. Capacity in which plaintiff brings this foreclosure: North Shore Community Bank & Trust Co. is the legal owner and holder of the Note and Mortgage herein and is entitled to all sums due thereunder.

O. Facts in support of redemption period, shorter than the longer of (i) 7 months from the date the mortgagor or, if more than one, all the mortgagors (I) have been served with summons or by publication or (II) have otherwise submitted to the jurisdiction of the Court, or (ii) 3 months from the entry of the judgment of foreclosure, if sought: The real estate is non-residential.

P. Facts in support of request for attorneys's fees and of costs and expenses: Pursuant to the terms of the Note and Mortgage, the mortgagors have obligated themselves to pay for the attorneys' fees, court costs, title costs, and other expenses which plaintiff has been and will be required to expend in the prosecution of this foreclosure.

REQUEST FOR RELIEF:

Plaintiff Requests:

(i) a judgment of foreclosure and sale;
(ii) an order granting a shortened redemption period;
(iii) a personal judgment for a deficiency;
(iv) an order granting possession of the premises effective 30 days after entry of the order confirming the Sheriff's sale and evicting any remaining occupants without further notice;
(v) such other and further relief as equity may require.

## COUNT II

## COMPLAINT AT LAW

1. Plaintiff is a duly authorized bank chartered under the laws of the State of Illinois, with offices in Wilmette, Winnetka, Skokie and Glencoe, Illinois.

2. On September 6, 1999, in Cook County, Illinois, for good and valuable consideration, Defendants NORSTAR DEVELOPMENT CORPORATION, JEFFREY GOLDBERG and STANLEY KOMPARDA a/k/a STANLEY L. KOMPARDA executed and delivered their Promissory Note to Plaintiff in the principal amount of $ 500,000, a copy of which is attached hereto and incorporated herein as Exhibit "B".

3. Plaintiff thereupon performed all its obligations thereunder.

4. Plaintiff remains the holder of the Promissory Note.

5. The Promissory Note came due by its own terms on September 6, 2000.

6. By reason of Defendants' failure to pay the Promissory Note when due, said Promissory Note is in default.

7. Defendants have waived presentment and demand in making the Promissory Note.

8. The amounts due on the Promissory Note as of September 30, 2000 is as follows:

| | |
|---|---|
| Current unpaid principal balance: | $ 448,195.72; |
| Per diem interest charges: | $ 168.07 per day; |
| Late Charges: | $ 22,409.79 due; |
| Interest to September 30, 2000 | $ 4,033.68. |

9. Plaintiff has been required to engage counsel and incur costs and fees in connection with enforcement of its rights under the Promissory Note which are the obligation of Defendants under the terms thereof.

WHEREFORE, Plaintiff prays for judgment against the Defendants in the amount of $ 474,638.69 (as of September 30, 2000), plus additional interest to date of judgment, plus attorney fees and costs as in the note provided, for its costs of suit, and for such other and further relief as the Court deems equitable and just.

LETVIN & STEIN

Attorneys for Plaintiff

LETVIN & STEIN
Attorneys for Plaintiff
541 North Fairbanks Court
Suite 2121
Chicago, Illinois 60611

(312) 527-2841

ARDC No.: 2715813

STATE OF ILLINOIS )
) SS
COUNTY OF LAKE )

David M. Stein, being first duly sworn on oath deposes and says that he is the duly authorized agent of the plaintiff in the above entitled cause. He has read the foregoing complaint, knows the contents thereof, and the statements set forth are true and correct, except as to those matters therein stated to be on information and belief, and as to such matters, the undersigned swears that he verily believes the same to be true.

________________________
David M. Stein

SUBSCRIBED AND SWORN TO
before me this day
of October, 2000 .

________________________
Notary Public

RECORDATION REQUESTED BY:
North Shore Community Bank & Trust Co.
1145 Wilmette Ave.
Wilmette, IL 60091

WHEN RECORDED MAIL TO:
North Shore Community Bank & Trust Co.
1145 Wilmette Ave.
Wilmette, IL 60091

TICOR TITLE INSURANCE COMPANY

174976

3842752

Filed for Record in:
LAKE COUNTY, IL
FRANK J. NUSTRA-RECORDER
On Jun 26 1996
At 3:05pm
Receipt #: 23156
Doc/Type : MTG
Deputy - Cashier #4

FOR RECORDER'S USE ONLY

This Mortgage prepared by: Jamie Sefton
1145 Wilmette Avenue
Wilmette IL 60091

# MORTGAGE

THIS MORTGAGE IS DATED JUNE 6, 1996, between Roger Holmes, whose address is , , IL (referred to below as "Grantor"); and North Shore Community Bank & Trust Co., whose address is 1145 Wilmette Ave., Wilmette, IL 60091 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor mortgages, warrants, and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, located in Lake County, State of Illinois (the "Real Property"):

> That part of the Northeast quarter of the Northwest quarter of Section 30, Township 46 North, Range 10 east of the Third Principal Meridian, lying East of the centerline of the public highway; also the Northwest quarter of the Northeast quarter of the said Section 30 and the Northeast quarter of the Northeast quarter of said Section 30 (except the East 1080 feet thereof), situated in Lake County, Illinois.

The Real Property or its address is commonly known as Southeast Corner of Route 59 and Townline Road, Lake Villa, IL 60046. The Real Property tax identification number is 02-30-200-001; 02-30-200-002; 02-30-100-002.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**DEFINITIONS.** The following words shall have the following meanings when used in this Mortgage. Terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code. All references to dollar amounts shall mean amounts in lawful money of the United States of America.

**Borrower.** The word "Borrower" means each and every person or entity signing the Note, including without limitation Norstar Development.

193

**Grantor.** The word "Grantor" means any and all persons and entities executing this Mortgage, including without limitation all Grantors named above. The Grantor is the mortgagor under this Mortgage. Any Grantor who signs this Mortgage, but does not sign the Note, is signing this Mortgage only to grant and convey that Grantor's interest in the Real Property and to grant a security interest in Grantor's interest in the Rents and Personal Property to Lender and is not personally liable under the Note except as otherwise provided by contract or law.

**Guarantor.** The word "Guarantor" means and includes without limitation each and all of the guarantors, sureties, and accommodation parties in connection with the Indebtedness.

**Improvements.** The word "Improvements" means and includes without limitation all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal and interest payable under the Note and any amounts expended or advanced by Lender to discharge obligations of Grantor or expenses incurred by Lender to enforce obligations of Grantor under this Mortgage, together with interest on such amounts as provided in this Mortgage. In addition to the Note, the word "Indebtedness" includes all obligations, debts and liabilities, plus interest thereon, of Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower, or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, absolute or contingent, liquidated or unliquidated and whether Borrower may be liable individually or jointly with others, whether obligated as guarantor or otherwise, and whether recovery upon such Indebtedness may be or hereafter may become barred by any statute of limitations, and whether such Indebtedness may be or hereafter may become otherwise unenforceable. **At no time shall the principal amount of Indebtedness secured by the Mortgage, not including sums advanced to protect the security of the Mortgage, exceed $1,000,000.00.**

**Lender.** The word "Lender" means North Shore Community Bank & Trust Co., its successors and assigns. The Lender is the mortgagee under this Mortgage.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender, and includes without limitation all assignments and security interest provisions relating to the Personal Property and Rents.

**Note.** The word "Note" means the promissory note or credit agreement dated June 6, 1996, **in the original principal amount of $500,000.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The interest rate on the Note is a variable interest rate based upon an index. The index currently is 8.250% per annum. The interest rate to be applied to the unpaid principal balance of this Mortgage shall be at a rate of 1.000 percentage point(s) over the Index, resulting in an initial rate of 9.250% per annum. NOTICE: Under no circumstances shall the interest rate on this Mortgage be more than the maximum rate allowed by applicable law. **NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the property, interests and rights described above in the "Grant of Mortgage" section.

**Related Documents.** The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ALL OBLIGATIONS OF GRANTOR UNDER THIS MORTGAGE AND THE RELATED

DOCUMENTS. THIS MORTGAGE IS INTENDED TO AND SHALL BE VALID AND HAVE PRIORITY OVER ALL SUBSEQUENT LIENS AND ENCUMBRANCES, INCLUDING STAUTORY LIENS, EXCEPTING SOLELY TAXES AND ASSESSMENTS LEVIED ON THE REAL PROPERTY, TO THE EXTENT OF THE MAXIMUM AMOUNT SECURED HEREBY. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**GRANTOR'S WAIVERS.** Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) this Mortgage is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Mortgage and to hypothecate the Property; (c) the provisions of this Mortgage do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Borrower shall pay to Lender all Indebtedness secured by this Mortgage as it becomes due, and Borrower and Grantor shall strictly perform all their respective obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor and Borrower agree that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until in default or until Lender exercises its right to collect Rents as provided for in the Assignment of Rents form executed by Grantor in connection with the Property, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Hazardous Substances.** The terms "hazardous waste," "hazardous substance," "disposal," "release," and "threatened release," as used in this Mortgage, shall have the same meanings as set forth in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or Federal laws, rules, or regulations adopted pursuant to any of the foregoing. The terms "hazardous waste" and "hazardous substance" shall also include, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos. Grantor represents and warrants to Lender that: (a) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any hazardous waste or substance by any person on, under, about or from the Property; (b) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (i) any use, generation, manufacture, storage, treatment, disposal, release, or threatened release of any hazardous waste or substance on, under, about or from the Property by any prior owners or occupants of the Property or (ii) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (c) Except as previously disclosed to and acknowledged by Lender in writing, (i) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of, or release any hazardous waste or substance on, under, about or from the Property and (ii) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation those laws, regulations, and ordinances described above. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for hazardous waste and hazardous substances. Grantor hereby (a) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), soil, gravel or rock products without the prior written consent of Lender.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without the prior written consent of Lender. As a condition to the removal of any Improvements, Lender may

require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and its agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon nor leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at its option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without the Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest therein; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of Real Property interest. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Illinois law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are a part of this Mortgage.

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Mortgage, except for the lien of taxes and assessments not due, and except as otherwise provided in the following paragraph.

**Right To Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each

insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property at any time become located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, to the extent such insurance is required by Lender and is or becomes available, for the term of the loan and for the full unpaid principal balance of the loan, or the maximum limit of coverage that is available, whichever is less.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at its election, apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default hereunder. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to prepay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor.

**Unexpired Insurance at Sale.** Any unexpired insurance shall inure to the benefit of, and pass to, the purchaser of the Property covered by this Mortgage at any trustee's sale or other sale held under the provisions of this Mortgage, or at any foreclosure sale of such Property.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (a) the name of the insurer; (b) the risks insured; (c) the amount of the policy; (d) the property insured, the then current replacement value of such property, and the manner of determining that value; and (e) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**EXPENDITURES BY LENDER.** If Grantor fails to comply with any provision of this Mortgage, or if any action or proceeding is commenced that would materially affect Lender's interests in the Property, Lender on Grantor's behalf may, but shall not be required to, take any action that Lender deems appropriate. Any amount that Lender expends in so doing will bear interest at the rate provided for in the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses, at Lender's option, will (a) be payable on demand, (b) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (i) the term of any applicable insurance policy or (ii) the remaining term of the Note, or (c) be treated as a balloon payment which will be due and payable at the Note's maturity. This Mortgage also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of the default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage.

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**CONDEMNATION.** The following provisions relating to condemnation of the Property are a part of this Mortgage.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments as may be requested by it from time to time to permit such participation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions

relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (a) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (b) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (c) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (d) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default (as defined below), and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (a) pays the tax before it becomes delinquent, or (b) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage.

**Security Agreement.** This instrument shall constitute a security agreement to the extent any of the Property constitutes fixtures or other personal property, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall assemble the Personal Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party), from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code), are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage.

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (a) the obligations of Grantor and Borrower under the Note, this Mortgage, and the Related Documents, and (b) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or agreed to the contrary by Lender in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time. If, however, payment is made by Borrower, whether voluntarily or otherwise, or by guarantor or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment (a) to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, (b) by reason of any judgment, decree or order of any court or administrative body having jurisdiction over Lender or any of Lender's property, or (c) by reason of any settlement or comprise of any claim made by Lender with any claimant (including without limitation Borrower), the Indebtedness shall be considered unpaid for the purpose of enforcement of this Mortgage and this Mortgage shall continue to be effective or shall be reinstated, as the case may be, notwithstanding any cancellation of this Mortgage or of any note or other instrument or agreement evidencing the Indebtedness and the Property will continue to secure the amount repaid or recovered to the same extent as if that amount never had been originally received by Lender, and Grantor shall be bound by any judgment, decree, order, settlement or compromise relating to the Indebtedness or to this Mortgage.

**DEFAULT.** Each of the following, at the option of Lender, shall constitute an event of default ("Event of Default") under this Mortgage:

**Default on Indebtedness.** Failure of Borrower to make any payment when due on the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Compliance Default.** Failure of Grantor or Borrower to comply with any other term, obligation, covenant or condition contained in this Mortgage, the Note or in any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by or on behalf of Grantor or Borrower under this Mortgage, the Note or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral documents to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor or Borrower's existence as a going business, the insolvency of Grantor or Borrower, the appointment of a receiver for any part of Grantor or Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor or Borrower.

**Foreclosure, Forfeiture, etc.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any of the Property. However, this subsection shall not apply in the event of a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the foreclosure or forefeiture proceeding, provided that Grantor gives Lender written notice of such claim and furnishes reserves or a surety bond for the claim satisfactory to Lender.

**Breach of Other Agreement.** Any breach by Grantor or Borrower under the terms of any other agreement between Grantor or Borrower and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor or Borrower to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender reasonably deems itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Lender, at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Borrower to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Borrower would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor or Borrower, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Mortgagee in Possession.** Lender shall have the right to be placed as mortgagee in possession or to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The mortgagee in possession or receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or

available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor or Borrower hereby waive any and all right to have the property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition.

**Waiver; Election of Remedies.** A waiver by any party of a breach of a provision of this Mortgage shall not constitute a waiver of or prejudice the party's rights otherwise to demand strict compliance with that provision or any other provision. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or take action to perform an obligation of Grantor or Borrower under this Mortgage after failure of Grantor or Borrower to perform shall not affect Lender's right to declare a default and exercise its remedies under this Mortgage.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and on any appeal. Whether or not any court action is involved, all reasonable expenses incurred by Lender that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest from the date of expenditure until repaid at the rate provided for in the Note. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, and title insurance, to the extent permitted by applicable law. Borrower also will pay any court costs, in addition to all other sums provided by law.

**NOTICES TO GRANTOR AND OTHER PARTIES.** Any notice under this Mortgage, including without limitation any notice of default and any notice of sale to Grantor, shall be in writing, may be be sent by telefacsimilie, and shall be effective when actually delivered, or when deposited with a nationally recognized overnight courier, or, if mailed, shall be deemed effective when deposited in the United States mail first class, certified or registered mail, postage prepaid, directed to the addresses shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Applicable Law. This Mortgage has been delivered to Lender and accepted by Lender in the State of Illinois. This Mortgage shall be governed by and construed in accordance with the laws of the State of Illinois.**

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Multiple Parties; Corporate Authority.** All obligations of Grantor and Borrower under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each of the persons signing below is responsible for all obligations in this Mortgage.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Mortgage in all other respects shall remain valid and enforceable.

**Successors and Assigns.** Subject to the limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If

ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time Is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Illinois as to all Indebtedness secured by this Mortgage.

**Waivers and Consents.** Lender shall not be deemed to have waived any rights under this Mortgage (or under the Related Documents) unless such waiver is in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by any party of a provision of this Mortgage shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision. No prior waiver by Lender, nor any course of dealing between Lender and Grantor or Borrower, shall constitute a waiver of any of Lender's rights or any of Grantor or Borrower's obligations as to any future transactions. Whenever consent by Lender is required in this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.**

**GRANTOR:**

X Roger Holmes
Roger Holmes

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF Illinois )
) ss
COUNTY OF Lake )

On this day before me, the undersigned Notary Public, personally appeared **Roger Holmes**, to me known to be the individual described in and who executed the Mortgage, and acknowledged that he or she signed the Mortgage as his or her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this 6th day of June, 19 96.

By K R Denkewalter Residing at ______

Notary Public in and for the State of ______

My commission expires ______

"OFFICIAL SEAL"
KIM R. DENKEWALTER
Notary Public, State of Illinois
My Commission Expires Dec. 13, 1999

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.21 (c) 1996 CFI ProServices, Inc. All rights reserved.
[IL-G03 NORSTAR.LN]

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call | Collateral | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|---|
| $500,000.00 | 09-06-1999 | 09-06-2000 | 0380001845 | 01 | | | RHM | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

**Borrower:** Norstar Development (TIN: )
790 Frontage Road
Northfield, IL 60093

**Lender:** North Shore Community Bank & Trust Co.
1145 Wilmette Ave.
Wilmette, IL 60091

**Principal Amount: $500,000.00** **Initial Rate: 9.250%** **Date of Note: September 6, 1999**

**PROMISE TO PAY.** Norstar Development and all cosigners signing this Note (referred to in this Note individually and collectively as "Borrower") jointly and severally promise to pay to North Shore Community Bank & Trust Co. ("Lender"), or order, in lawful money of the United States of America, the principal amount of Five Hundred Thousand & 00/100 Dollars ($500,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on September 6, 2000. In addition, Borrower will pay regular quarterly payments of accrued unpaid interest beginning December 6, 1999, and all subsequent interest payments are due on the same day of each quarter after that. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. Unless otherwise agreed or required by applicable law, payments will be applied first to accrued unpaid interest, then to principal, and any remaining amount to any unpaid collection costs and late charges.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the The Prime Rate as published in the Money Rates section of the Wall Street Journal (the "Index"). The index is not necessarily the lowest rate charged by Lender on its loans. If the index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. Borrower understands that Lender may make loans based on other rates as well. The interest rate change will not occur more often than each day. The Index currently is 8.250% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 1.000 percentage point over the Index, resulting in an initial rate of 9.250% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, they will reduce the principal balance due.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $5.00, whichever is greater.

**DEFAULT.** Borrower will be in default if any of the following happens: (a) Borrower fails to make any payment when due. (b) Borrower breaks any promise Borrower has made to Lender, or Borrower fails to comply with or to perform when due any other term, obligation, covenant, or condition contained in this Note or any agreement related to this Note, or in any other agreement or loan Borrower has with Lender. (c) Any representation or statement made or furnished to Lender by Borrower or on Borrower's behalf is false or misleading in any material respect either now or at the time made or furnished. (d) Borrower becomes insolvent, a receiver is appointed for any part of Borrower's property, Borrower makes an assignment for the benefit of creditors, or any proceeding is commenced either by Borrower or against Borrower under any bankruptcy or insolvency laws. (e) Any creditor tries to take any of Borrower's property on or in which Lender has a lien or security interest. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. (f) Any guarantor dies or any of the other events described in this default section occurs with respect to any guarantor of this Note. (g) A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the indebtedness is impaired. (h) Lender in good faith deems itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount. Upon default, including failure to pay upon final maturity, Lender, at its option, may also, if permitted under applicable law, increase the variable interest rate on this Note to 4.000 percentage points over the Index. The interest rate will not exceed the maximum rate permitted by applicable law. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower also will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law. **This Note has been delivered to Lender and accepted by Lender in the State of Illinois. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Cook County, the State of Illinois. This Note shall be governed by and construed in accordance with the laws of the State of Illinois.**

**RIGHT OF SETOFF.** Borrower grants to Lender a contractual security interest in, and hereby assigns, conveys, delivers, pledges, and transfers to Lender all Borrower's right, title and interest in and to, Borrower's accounts with Lender (whether checking, savings, or some other account), including without limitation all accounts held jointly with someone else and all accounts Borrower may open in the future, excluding however all IRA and Keogh accounts, and all trust accounts for which the grant of a security interest would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on this Note against any and all such accounts.

**COLLATERAL.** This Note is secured by Mortgage and Assignment of Rents dated 06/06/96 on Southeast Corner of Route 59 and Townline Road, Lake Villa, IL 60046.

**LINE OF CREDIT.** This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Advances under this Note may be requested either orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following party or parties are authorized to request advances under the line of credit until Lender receives from Borrower at Lender's address shown above written notice of revocation of their authority: Stanley Komparda, President; and Jeffrey Goldberg, Vice President. Borrower agrees to be liable for all sums either: (a) advanced in accordance with the instructions of an authorized person or (b) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (a) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (b) Borrower or any guarantor ceases doing business or is insolvent; (c) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; (d) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender; or (e) Lender in good faith deems

09-06-1999

# PROMISSORY NOTE
**(Continued)**



itself insecure under this Note or any other agreement between Lender and Borrower.

**PRIOR NOTE.** Loan renewal # 0380001845 from Norstar Development to North Shore Community Bank& Trust dated 09-06-99.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, protest and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan, or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**ILLINOIS INSURANCE NOTICE.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in the collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by their agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.

**PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THE NOTE.**

**BORROWER:**

**Norstar Development**

By: [signature]
Jeffrey Goldberg, President

X [signature: Stanley L. Komparda]
Stanley Komparda, Cosigner

X [signature]
Jeffrey Goldberg, Cosigner

Variable Rate. Line of Credit.

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.260 (c) 1999 CFI ProServices, Inc. All rights reserved. [IL-D20 NORSTAR.LN]

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF SONOMA

I am employed in the County of Sonoma, State of California. I am over the age of 18 and not a party to the within action; my business address is: 201 Keller Street, Petaluma, CA 94952. On December 4, 2000, I served or caused to be served the foregoing document described as NOTICE OF REMOVAL on all interested parties in this action by placing ( ) the original (X) a true copy thereof enclosed in sealed envelopes () addressed as stated on the attached mailing list
(x) addressed as follows:

LETVIN & STEIN
541 North Fairbanks Court
Suite 2121
Chicago, Illinois 60611

(X) BY MAIL

(X) I deposited or caused to be deposited such envelope in the mail at Petaluma, California. The envelope was mailed with postage thereon fully prepaid.

( ) (BY PERSONAL SERVICE) I delivered or caused such envelope to be delivered by hand to the addressee.

(X) (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

( ) (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on December 4, 2000, at Petaluma, California.

Carrie L. Corbett
Carrie L. Corbett

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

JUDGE KOCORAS

MAGISTRATE JUDGE GERALDINE SOAT BROWN

00C 7870

**I. (a) PLAINTIFFS**
NORTH SHORE COMMUNITY BANK & TRUST CO.

**DEFENDANTS**
MARY FRANCES DAVIES a/k/a et al.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Lake County, IL
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Contra Costa Co.
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
LETVIN & STEIN
541 N. Fairbanks Court, Suite 2121
Chicago, IL 60611
(312) 527-2841

ATTORNEYS (IF KNOWN)
BRAZE LAW OFFICES
201 Keller Street
Petaluma, CA 94952
(707) 763-2212

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- XX 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | X 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | XX 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | X 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original Proceeding XX 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

CONTRACT: ☐ 110 Insurance; ☐ 120 Marine; ☐ 130 Miller Act; ☐ 140 Negotiable Instrument; ☐ 150 Recovery of Overpayment & Enforcement of Judgment; ☐ 151 Medicare Act; ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans); ☐ 153 Recovery of Overpayment of Veteran's Benefits; ☐ 160 Stockholders' Suits; ☐ 190 Other Contract; ☐ 195 Contract Product Liability

REAL PROPERTY: ☐ 210 Land Condemnation; X 220 Foreclosure; ☐ 230 Rent Lease & Ejectment; ☐ 240 Torts to Land; ☐ 245 Tort Product Liability; ☐ 290 All Other Real Property

TORTS — PERSONAL INJURY: ☐ 310 Airplane; ☐ 315 Airplane Product Liability; ☐ 320 Assault, Libel & Slander; ☐ 330 Federal Employers' Liability; ☐ 340 Marine; ☐ 345 Marine Product Liability; ☐ 350 Motor Vehicle; ☐ 355 Motor Vehicle Product Liability; ☐ 360 Other Personal Injury

PERSONAL INJURY: ☐ 362 Personal Injury — Med. Malpractice; ☐ 365 Personal Injury — Product Liability; ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY: ☐ 370 Other Fraud; ☐ 371 Truth in Lending; ☐ 380 Other Personal Property Damage; ☐ 385 Property Damage Product Liability

CIVIL RIGHTS: ☐ 441 Voting; ☐ 442 Employment; ☐ 443 Housing/Accommodations; ☐ 444 Welfare; ☐ 440 Other Civil Rights

PRISONER PETITIONS: ☐ 510 Motions to Vacate Sentence; HABEAS CORPUS: ☐ 530 General; ☐ 535 Death Penalty; ☐ 540 Mandamus & Other; ☐ 550 Civil Rights; ☐ 555 Prison Condition

FORFEITURE/PENALTY: ☐ 610 Agriculture; ☐ 620 Other Food & Drug; ☐ 625 Drug Related Seizure of Property 21 USC 881; ☐ 630 Liquor Laws; ☐ 640 R.R. & Truck; ☐ 650 Airline Regs; ☐ 660 Occupational Safety/Health; ☐ 690 Other

LABOR: ☐ 710 Fair Labor Standards Act; ☐ 720 Labor/Mgmt. Relations; ☐ 730 Labor/Mgmt. Reporting & Disclosure Act; ☐ 740 Railway Labor Act; ☐ 790 Other Labor Litigation; ☐ 791 Empl. Ret. Inc. Security Act

BANKRUPTCY: ☐ 422 Appeal 28 USC 158; ☐ 423 Withdrawal 28 USC 157

PROPERTY RIGHTS: ☐ 820 Copyrights; ☐ 830 Patent; ☐ 840 Trademark

SOCIAL SECURITY: ☐ 861 HIA (1395ff); ☐ 862 Black Lung (923); ☐ 863 DIWC/DIWW (405(g)); ☐ 864 SSID Title XVI; ☐ 865 RSI (405(g))

FEDERAL TAX SUITS: ☐ 870 Taxes (U.S. Plaintiff or Defendant); ☐ 871 IRS — Third Party 26 USC 7609

OTHER STATUTES: ☐ 400 State Reapportionment; ☐ 410 Antitrust; ☐ 430 Banks and Banking; ☐ 450 Commerce/ICC Rates/etc.; ☐ 460 Deportation; ☐ 470 Racketeer Influenced and Corrupt Organizations; ☐ 810 Selective Service; ☐ 850 Securities/Commodities/Exchange; ☐ 875 Customer Challenge 12 USC 3410; ☐ 891 Agricultural Acts; ☐ 892 Economic Stabilization Act; ☐ 893 Environmental Matters; ☐ 894 Energy Allocation Act; ☐ 895 Freedom of Information Act; ☐ 900 Appeal of Fee Determination Under Equal Access to Justice; ☐ 950 Constitutionality of State Statutes; ☐ 890 Other Statutory Actions

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

28 USC §§1441,1446

DOCKETED
DEC 1 8 2000

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ $474,638.69
CHECK YES only if demanded in complaint: JURY DEMAND: ☐ YES XX NO

**VIII.** This case X is not a refiling of a previously dismissed action.
☐ is a refiling of case number ________, previously dismissed by Judge ________

DATE 12/14/00 SIGNATURE OF ATTORNEY OF RECORD
James J. Braze

UNITED STATES DISTRICT COURT

1-2